**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Norfolk Division**

CHERYL A. PETERS,
        Plaintiff,

v.                                                                          ACTION NO. 2:01cv120

SCHOOL BOARD OF THE CITY
    OF VIRGINIA BEACH,

        Defendants.

**OPINION & ORDER**

This matter was referred to the undersigned United States Magistrate Judge pursuant to the provisions of 28 U.S.C. § 636(c)(1) and Rule 72 of the Rules of the United States District Court for the Eastern District of Virginia. On May 14, 2001, all parties consented to trial before a Magistrate Judge, and an order of reference was entered.

### I. FACTUAL AND PROCEDURAL BACKGROUND

On February 16, 2001, Dr. Cheryl A. Peters filed a complaint against the School Board of the City of Virginia Beach, and several school administrators,[1] alleging they violated her rights under Title VI of the Civil Rights Act of 1964, discharged her in retaliation for the exercise of her First Amendment rights in violation of 42 U.S.C. § 1983, and defamed her under Virginia common

---

[1] In addition to the School Board, the complaint was filed against Dr. Timothy Jenney, individually and in his official capacity as Superintendent of Schools, Dr. K. Edwin Brown, individually and in his official capacity as Assistant Superintendent for Accountability, Nancy Guy, individually and in her official capacity as a School Board member, and, Dr. Sheila Magula, individually and in her official capacity as Associate Superintendent for Curriculum and Instruction.

law. The claims stem from the Defendants' actions during Plaintiff's employment by the Virginia Beach School Board as the Director of Gifted Education and Magnet Programs, and the eventual nonrenewal of her contract.

From August 24, 2004, through September 2, 2004, a jury trial was held. On September 2, 2004, the jury completed a Special Interrogatories and Jury Verdict form, and returned a verdict for Plaintiff and against the Virginia Beach School Board, Timothy Jenney, and Sheila Magula. The jury found Brown did not violate Plaintiff's rights. The jury awarded compensatory damages in the amount of $175,000 for back pay, and $50,000 for emotional distress. The jury further awarded punitive damages against Timothy Jenney in the amount of $250,000 and punitive damages against Sheila Magula in the amount of $150,000.

Following the jury's verdict, the remaining Defendants filed a motion for judgment as a matter of law under Federal Rule of Civil Procedure 50(b), along with a motion for a new trial under Federal Rule of Civil Procedure 59. Plaintiff filed a motion for attorney's fees. A hearing was held on the post-trial motions on February 3, 2005. The Court denied Defendants' motion for judgment as a matter of law, and granted in part and denied in part Defendants' motion for a new trial. The Court granted a remittitur of the jury's back pay award and the jury's punitive damages award. The Clerk entered judgment in accordance with the Court's March 31, 2005, Opinion and Order. On April 5, 2005, the Court ordered the Plaintiff to file a pleading with this Court on or before May 2, 2005, stating her position with regard to the remittitur ordered in the Opinion and Order filed March 31, 2005.

On April 28, 2005, Defendants filed a notice of appeal to the Fourth Circuit. On May 11, 2005, Plaintiff filed a notice of cross-appeal to the Fourth Circuit, and the case was transferred to

the Fourth Circuit Court of Appeals. On October 19, 2005, the Fourth Circuit granted appellants' motion for limited remand to allow the district court to decide whether Peters accepted remittitur.

Following remand, Defendants filed a Motion for Entry of a Final Order Declaring that the Plaintiff Accepts Remittitur or Ordering a New Trial on All Issues, and Plaintiff filed a Motion to Reconsider Post-Trial Order Granting New Trial on Damages. A hearing was held on February 27, 2006. The Court found the Order entered on April 5, 2005, allowing the Plaintiff time to accept or deny the remittitur, is not a final, appealable order. See Anderson v. Roberson, 249 F.3d 539, 542 (6th Cir. 2001) ("Once the district court entered its order giving the Plaintiffs the choice between accepting the remittitur or having a new trial, there was no final order from which the parties could appeal."). The Court further found that Plaintiff did not accept the remittitur. Therefore, there has been no final order entered in this case.

On April 28, 2006, the Fourth Circuit Court of Appeals dismissed the appeal by the Defendants and cross-appeal by the Plaintiff pursuant to Rule 42(b) of the Federal Rules of Appellate Procedure.

On May 31, 2006, the Defendants filed a Motion to Reconsider Prior Rulings on Defendants' Motion for Judgment as a Matter of Law and Motion for a New Trial. On September 29, 2006, the Court issued its Opinion and Order denying Plaintiff's Motion to Reconsider as moot, denying Defendants' Motion for Entry of a Final Order, and granting the Defendants' Motion to Reconsider. As a result, Timothy Jenney and Sheila Magula were dismissed as defendants, and the Court rescinded the jury verdict and remittitur order to the extent they pertained to Jenney and Magula. Finally, the Opinion and Order granted the Plaintiff eleven days to file a pleading accepting or rejecting remittitur of the back pay award from $175,000 to $145,000.

The lone remaining defendant, School Board of the City of Virginia Beach, filed a new Motion and Memorandum to Reconsider Defendants' Motion for Judgment as a Matter of Law [Doc. No. 154] on October 6, 2006, challenging Plaintiff's Title VI retaliation verdict. On October 10, 2006, the Court conducted a hearing via conference call in which Plaintiff's response to the Court's September 29, 2006, Order requiring her to accept or reject the remittitur of the back pay award was stayed. On November 13, 2006, Plaintiff filed her Memorandum in Opposition to Motion for Reconsideration. Defendant filed its Reply to Response to Defendants' Motion for Reconsideration on November 22, 2006.

The factual background is outlined in length in the Court's March 31, 2005, post-trial order, and will not be recited here.

## II.  ANALYSIS

The Defendant has filed a motion for reconsideration of the March 31, 2005, post-trial order. Because the Plaintiff rejected the remittitur contained in the post-trial order, and elected a new trial on damages, the Court ruled in March 2006 that the March 31, 2005, post-trial order is not a final order. Instead, it is an interlocutory order subject to modification. See American Canoe Ass'n. v. Murphy Farms, Inc., 326 F.3d 505, 514-15 (4th Cir. 2003); Fayetteville Investors v. Commercial Builders, Inc., 936 F.2d 1462, 1469-70 (4th Cir. 1991). Accordingly, there has been no final order entered in this case.

Motions for reconsideration of interlocutory orders are not subject to the strict standards applied to motions for reconsideration of a final judgment under Federal Rule of Civil Procedure 60(b). American Canoe Ass'n., 326 F.3d at 514 (citing 12 Moore's Federal Practice § 60.23). It is within the discretion of the court to reconsider and modify its interlocutory judgments at any time

prior to final judgment when such is warranted. Id. at 514-15 (citing Moses H. Cone Mem. Hosp. v. Mercury Const. Corp., 460 U.S. 1, 12 (1983)). "Doctrines such as law of the case . . . have evolved as a means of guiding that discretion." Id. at 515. The Court is bound by earlier decisions of the case, which become "law of the case" unless: "(1) a subsequent trial produces substantially different evidence, (2) controlling authority has since made a contrary decision of law applicable to the issue, or (3) the prior decision was clearly erroneous and would work manifest injustice." Sejman v. Warner-Lambert Co., Inc., 845 F.2d 66, 69 (4th Cir. 1988) (internal quotation marks omitted).

### A. Motion to Reconsider Defendant's Motion for Judgment as a Matter of Law

After the Court granted Defendant's Motion to Reconsider Defendants' Motion for Judgment as a Matter of Law on Plaintiff's First Amendment retaliation claim in light of the Supreme Court's opinion in Garcetti v. Ceballos, 126 S. Ct. 1951 (2006), Defendant filed the instant Motion to Reconsider its Motion for Judgment as a matter of Law as it relates to the Title VI claim based on the same case. In Garcetti, the Court held that a public employee who makes statements in the pursuit of her official job responsibilities is not speaking as a citizen for First Amendment purposes, and the Constitution does not protect the employee from discipline for those communications. Id.

The Defendants face a high hurdle in attempting to set aside a jury verdict. When considering a motion for judgment as a matter of law under Federal Rule of Civil Procedure 50(b), "the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence. Thus, . . . it must disregard all evidence favorable to the moving party that the jury is not required to believe." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150-51 (2000). This Court can grant the motion and set the jury verdict aside

only if "the evidence is such that without weighing the credibility of the witnesses there can be but one reasonable conclusion as to the verdict." Jacobs v. Coll. of William and Mary, 517 F. Supp. 791, 794 (E.D.Va. 1980) (citing Brady v. S. Ry. Co., 320 U.S. 476, 479-80 (1943)). With these controlling principles in mind, the Court turns to the merits of the motion for judgment as a matter of law.

In the instant motion, Defendant argues that Plaintiff's Title VI claim should be dismissed with prejudice because Plaintiff has failed to prove that she engaged in any protected activity in opposition to actual discrimination forbidden by Title VI.[2] Defendant's argument relies on the Supreme Court's holding in Garcetti. 126 S. Ct. 1951. According to Defendant, this Court should apply the holding in Garcetti to Plaintiff's Title VI retaliation claim. Defendant argues that such an extension would yield the following result: an employee does not engage in protected activity for purposes of Title VI when the activity leading to the employee's discharge was a part of the employee's official job responsibilities.

This Court finds the Defendant's argument for extending Garcetti to Title VI retaliation claims uncompelling. The Supreme Court was clear when it stated in Garcetti, "We hold that when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." 126 S. Ct. at 1960. Significantly, the Garcetti Court limited its analysis to the First Amendment, as it framed its analysis around the "question presented by the instant case" which was "whether the First Amendment protects a government employee from

---

[2]Because the Defendant's motion does not contest the jury's finding of an adverse employment action or a causal connection, the Court will not consider those elements.

discipline based on speech made pursuant to the employee's official duties." Id. at 1955. Accordingly, Garcetti did nothing to change the landscape of Title VI jurisprudence.

Because no controlling authority has made a contrary decision of law applicable to the issue presented by Defendant's Motion to Reconsider, this Court is bound by the law of the case, including Title VI and Peters, 327 F.3d at 307. See Sejman, 845 F.3d at 69. In recognizing a private right of action for Title VI retaliation, the Fourth Circuit explained that "34 C.F.R. § 100.7(e)'s retaliation prohibition[3] is, at least to some extent, a valid interpretation of § 601 that is enforceable via § 601's implied private right of action." Peters, 327 F.3d at 319. Section 100.7(e) reads:

> No recipient or other person shall intimidate, threaten, coerce, or discriminate against any individual for the purpose of interfering with any right or privilege secured by section 601 of the Act or this part, or because he has made a complaint, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this part.

34 C.F.R. § 100.7(e). By way of interpretation, the Fourth Circuit provided that "the [§ 100.7(e)] retaliation regulations are enforceable via an implied private right of action to the extent they forbid retaliation for *opposing* practices that one reasonably believes are made unlawful by § 601." Peters, 327 F.3d at 319 (emphasis added).

Offering guidance to this Court, the Fourth Circuit held that to prove her Title VI retaliation claim, Plaintiff must show "(1) that she engaged in protected activity; (2) that [Defendant] took a material adverse employment action against her, and (3) that a causal connection existed between

---

[3]34 C.F.R. § 100.7(e), a regulation promulgated by the Department of Education, is incorporated into Title VI through 42 U.S.C. § 2000d-1, which states that "Each Federal department and agency which is empowered to extend Federal financial assistance to any program or activity . . . is authorized and directed to effectuate the provision of section 2000d of this title . . . by issuing rules, regulations, or orders of general applicability . . . ." See Peters, 327 F.3d at 319.

the protected activity and the adverse action." <u>Peters</u>, 327 F.3d at 320.

Citing several Title VII cases, Plaintiff claims that she engaged in protected activity "under both the 'participation' and 'opposition' clauses of the law." (Pl.'s Mem. in Opp. 13.)  Although never explicitly established by the Fourth Circuit, Plaintiff assumes protected activity may be proven in the same manner under Title VI as it is under Title VII.  Under Title VII, protected activities fall into two categories:  participation or opposition.  <u>See</u> 42 U.S.C. § 2000e-3(a); <u>see</u> <u>also</u> <u>Laughlin v. Metro. Washington Airports Auth.</u>, 149 F.3d 253, 259 (4th Cir. 1998).  "An employer may not take adverse employment action against an employee for participating in an ongoing investigation or proceeding under Title VII, nor may the employer take adverse employment action against an employee for opposing discriminatory practices in the workplace."  <u>Id.</u>  The <u>Peters</u> decision did not explicitly state that, for the purpose of establishing a Title VI retaliation claim, Peters may prove protected activity by showing either opposition to practices she reasonably believed to be unlawful under Title VI *or* participation in an investigation or proceeding under Title VI.  However, because the Fourth Circuit construed the elements of the Title VI retaliation claim "as in other civil rights contexts," <u>Peters</u>, 327 F.3d at 320, a fair reading of the <u>Peters</u> opinion instructs that protected activity may be proven in just that manner.  <u>See</u> <u>id.</u> at 319.

        **1.**    **Plaintiff's Proof of Protected Activity Under the Opposition Prong**

To show she engaged in opposition activity, Plaintiff must "prove that [s]he opposed an unlawful employment practice which [s]he reasonably believed had occurred or was occurring." <u>Peters</u>, 327 F.3d at 320 (internal quotations and citation omitted).  The relevant inquiry, therefore, is "(1) whether Peters *subjectively* (that is, in good faith) believed that the district had engaged in a practice violative of § 601, and (2) whether this belief was *objectively* reasonable in light of the

facts." Id. at 321 (emphasis in original) (internal quotations and citation omitted).

In determining whether Plaintiff has proven she engaged in opposition activity, this Court must first determine whether Plaintiff had a subjectively reasonable belief that Defendant was engaging in a practice that violated section 601 of Title VI, which provides that "No person in the United States shall, on the ground of race, color or national origin, be excluded from participating in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." See Peters, 327 F.3d at 321. If that initial inquiry is determined affirmatively, the Court must next determine whether Plaintiff "opposed" the employment practice.

In its Opinion and Order issued on March 31, 2005, denying the Defendant's Motion for Judgment as a Matter of Law, this Court held that there was sufficient evidence presented at trial to support a jury finding that Peters reasonably and in good faith believed Virginia Beach engaged in a practice violative of section 601. Because the Defendant does not challenge this portion of the Court's holding in its Motion to Reconsider, the Court will not address it.

Plaintiff argues that she "opposed" Defendant's practices, which she believed violated Title VI, by (1) identifying race discrimination in the gifted program; (2) noticing Defendant's biases about which races and backgrounds generate gifted children and how those biases had created a racially discriminatory gifted program; (3) trying to remedy the discrimination by developing and attempting to implement a program to instil equity in the gifted program; (4) advocating for a more equitable gifted program; and, (5) expressing her observations and concerns about discrimination and the need to eradicate it. At issue is whether Plaintiff's efforts to achieve and promote equity in the school district's gifted programs through the aforementioned actions constitutes opposition

activity for the purpose of proving a Title VI retaliation claim.

Applying the standard governing our reconsideration of a motion for judgment as a matter of law, this Court finds that even when disregarding all evidence favorable to the moving party that the jury is not required to believe, Plaintiff did not engage in protected activity under the opposition prong. See Reeves v. Sanderson, 350 U.S. at 151. All of the actions Plaintiff now claims constitute opposition activity were pursued not in opposition to her belief that Defendant was violating Title VI, but in fulfilment of her goal and responsibility to promote "the written mission of Virginia Beach – to promote a racially unbiased gifted program." (Pl.'s Mem. in Opp. to Defs. Mot. to Recons. Defs. Mot. for J.M.O.L. (July 10, 2006) 10.) By Plaintiff's own admission, "all of the actions that I took in terms of building these programs to eliminate that – that was my method of speaking up. I did not submit letters to the board, to the superintendent, saying, you are discriminating." (Tr. 175:19-22.) Thus, regardless of Plaintiff's belief that the School Board was engaging in activity violative of Title VI, the actions she took were never in opposition to those activities. Therefore, Plaintiff cannot prove that she engaged in protected activity under the opposed an unlawful employment practice that she reasonably believed had occurred or was occurring.

### 2. Plaintiff's Proof of Protected Activity Under the Participation Prong

Under the participation prong, Plaintiff may prove she engaged in a protected activity by proving she "made a complaint, testified, assisted, or participated *in any manner* in an investigation, proceeding, or hearing under this part" concerning practices forbidden by section 601. 34 C.F.R. § 100.7(e) (emphasis added). Plaintiff asserts that her involvement as the school board's liaison to the OCR investigation into discrimination in violation of Title VI by the Defendant constitutes engaging in "protected activity" under the participation prong. To that end, Plaintiff argues that the

fact that her job required her to participate in the investigation is irrelevant to Title VI protection. The Defendant, on the other hand, asserts that since the Plaintiff's actions were undertaken in the course of her official employment duties they do not constitute "protected activities" for purposes of Title VI.

In other civil rights contexts, such as Title VII, from which the standard for proving protected activity was borrowed, "[t]he words 'participate in any manner' express . . . intent to confer 'exceptionally broad protection' upon" persons covered by Title VII. Clover v. Total Sys. Servs., Inc., 176 F.3d 1346, 1353 (11th Cir. 1999) (interpreting the phrase "participate in any manner" as used in 42 U.S.C. § 2000e-3(a), the codification of Title VII retaliation) (citing Pettway v. Am. Cast Iron Pipe Co., 411 F.2d 998, 1006 n.18 (5th Cir. 1969)). Further, the Fourth Circuit has explained in another context that the word "any" "is a term of great breadth." U.S. v. Wildes, 120 F.3d 468, 470 (4th Cir. 1997) (citing Blacks Law Dictionary 94 (6th ed. 1990)). It "has an expansive meaning, that is, 'one or some indiscriminately of whatever kind.'" Id. (citing U.S. v. Gonzales, 520 U.S. 1, 5 (1997)); see also Clover, 176 F.3d at 1353 (applying the same definition to interpret the "participate in any manner" clause in Title VII).

Discussing what manner of participation in an investigation is necessary to bring an employee within the protection of Title VII's participation clause, the Eleventh Circuit held that an employee who participated in her employer's in-house investigation in response to an EEOC notice of charge of discrimination engaged in protected activity under the participation prong. Clover, 176 F.3d at 1353. In Clover, the plaintiff alleged retaliatory discharge in violation of Title VII's anti-retaliation provision when she was discharged after submitting to managerial questioning in response to an EEOC notice of charge of discrimination. Id. at 1352. The EEOC charge did not

directly concern the plaintiff, and her involvement in her employer's investigation was limited to responding to questions about interactions between the accused and the accuser. Id. In holding that the plaintiff did engage in protected activity, the court found that

> [b]ecause the information the employer gathers as part of its investigation in response to the notice of charge of discrimination will be utilized by the EEOC, it follows that an employee who participates in the employer's process of gathering such information is participating, in some manner, in the EEOC's investigation.

Id. at 1353.

Similar to the plaintiff in Clover, Peters was involved in gathering information as part of her employer's investigation and response to the notice of charge of discrimination under Title VI by the OCR. Peters's involvement in the investigation actually exceeded that of the plaintiff in Clover, as Peters was instructed by her employer to remedy the two OCR complaints by contacting the OCR and "tak[ing] the lead" in an official visit by the OCR to Virginia Beach. (Tr. 54:6-9.) Drawing all reasonable inferences in favor of the nonmoving party, it is plain from the plaintiff's testimony at trial that she participated, in some manner, in the OCR's investigation. Therefore, Plaintiff satisfied the protected activity prong of her Title VI retaliation claim, and Defendant's Motion to Reconsider its Motion for Judgment as a Matter of Law must be DENIED.

The Court notes that Defendant makes a persuasive argument that

> [t]aken to its logical end, Plaintiff's argument that Title VI protects conduct that occurs in the pursuit of an employee's official job responsibilities would result in de facto permanent tenure, and immunity from all discipline, for those employees . . . who are hired to address actual or perceived racial discrimination and to alleviate and prevent racial disparities.

(Def.'s Reply Mem. 5.) However, the potential for "immunity from all discipline" created by recognizing as protected activity an employee's participation in a Title VI investigation when the

employee was hired for that specific purpose is alleviated by the causation prong of the Title VI retaliation claim. See Peters, 327 F.3d at 320. That element of the retaliation claim "gives a measure of protection to employers who are met with false claims" that their acts are in retaliation for an employee's participation in an investigation for which the employee was hired. McMenemy v. City of Rochester, 241 F.3d 279, 285 (2d Cir. 2001) (addressing Title VII defendant's concern that a broad, inclusive interpretation of "employee" for determining proper plaintiffs under the statute would expose employers to liability for retaliation in *all* circumstances in which an employee is terminated by a new employer after having engaged in a protected activity concerning a former employer).

At trial, the jury found a causal link between Peters's protected activity and the adverse employment action. (Special Interrogatories and Jury Verdict No. 3.) Further, the jury found the School Board did not "*present evidence* that the adverse employment action was motivated by something other than retaliation for [Peters] engaging in protected activity." (Special Interrogatories and Jury Verdict No. 4) (emphasis added). This was despite the fact that the Defendant presented documents and testimony to support its position that Peters's contract was nonrenewed due to her poor performance. As this Court noted in its March 31, 2005, Opinion and Order, it is possible that the jury disregarded the Defendant's evidence as incredible. Because this Court must disregard all evidence favorable to the moving party that the jury is not required to believe, the jury's finding of a causal link between Plaintiff's protected activity and the subsequent adverse employment action must remain undisturbed. See Reeves v. Sanderson, 530 U.S. at 151.

    **B.**    **Damages**

Upon the denial of Defendant's instant Motion to Reconsider, the Defendant remains liable for the $50,000 awarded the Plaintiff for emotional distress, and for Plaintiff's back pay. Consistent with its September 29, 2006, Opinion and Order, the Court has ordered a remittitur of the jury's back pay award from $175,000 to $145,000, and granted a new trial on the back pay award nisi remittitur at Plaintiff's option.

### III. ORDER

For the foregoing reasons, the Court DENIES the Defendant's Motion to Reconsider Defendants' Motion for Judgment as a Matter of Law [Doc. No. 154].

The Plaintiff has eleven days from the filing of this Opinion and Order to file a pleading accepting or rejecting the remittitur of the back pay award from $175,000 to $145,000. The Clerk is DIRECTED to withhold entry of Judgment until further order of the Court.

The Clerk shall mail a copy of this Opinion and Order to all counsel of record.

                                                  /s/
                                      Tommy E. Miller
                             UNITED STATES MAGISTRATE JUDGE

Norfolk, Virginia
January 26, 2007